FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA   00 APR 21  AM 9: 15
MIDDLE DIVISION   U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| SYBIL ANN OWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CV 99-BU-1682-M |
| vs. | ) |
| | ) **ENTERED** |
| PICCADILLY CAFETERIAS, INC., | ) |
| | ) APR 21 2000 |
| Defendant. | ) |

## Memorandum Opinion

This cause comes before the Court on a motion for summary judgment filed by the Defendant, Piccadilly Cafeterias, Inc. ("Piccadilly"), on February 22, 2000. In its motion, Piccadilly contends that no genuine issue of material fact supports the claims of the Plaintiff, Sybil Ann Owens ("Owens"), of racial harassment under 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 and retaliation under 42 U.S.C. § 2000e, *et seq.*, and that it is, therefore, entitled to judgment as a matter of law. Owens disputes this.

Summary judgment avails the parties of an invaluable opportunity to test the mettle of a case before it ever reaches trial. In evaluating a motion for summary judgment, the court assesses all of the proof the parties can bring to bear to ascertain the presence of a genuine



issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, the court's determination of the propriety of summary judgment is to be tempered by a strong inclination in favor of the non-movant. Therefore, only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a grant of summary judgment appropriate. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the initial responsibility of the movant to inform this court of the grounds for its motion and to specifically identify those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. The movant carries no meager burden, for it must illuminate for the district court, with reference to materials on file, the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). *But see Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998) ("When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' [*Celotex*] at 323 [], in order to discharge this initial responsibility. Instead, the moving party simply may '"show[ ]" — that is, point[ ] out to the district court — that there is an absence of evidence to support the nonmoving party's case.'").

Only after the moving party has satisfied this initial burden must the nonmoving party "make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). At that point, Federal Rule of Civil Procedure 56(e) dictates that the nonmoving party "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer*

*Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party." *Gonzalez v. Lee County Housing Authority*, 161 F.3d at 1294 (11th Cir. 1998). Bare speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *See id.*

While the district court is permitted to consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the non-movant bears the absolute responsibility of designating the specific facts in the record that support its claims. *See United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). In other words, Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.* *See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. Nonetheless, the court must abstain from examining the probity of conflicting evidence and from deciding issues of credibility. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Still though, "[t]he nonmoving party must provide more

than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## Facts

For all of the lengthy explication in the briefs of the parties, the facts in this case are really rather simple and straightforward. Piccadilly operates a chain of cafeteria-style restaurants, including one in Gadsden, Alabama, the location at which the events pertinent to this action transpired. For purposes of this action, the Plaintiff started her employment with Piccadilly in August of 1997, working as a line server and was promoted to a line supervisor position in early 1998. While her employment reviews beginning on March 27, 1998, were generally favorable, Owen was informed in reviews on that date and July 9, 1998, that she should be less blunt and more positive with customers and attempt to smile at and make eye contact with customers.[1] Owens alleges that these were not serious defects in the performance of her job.

Owens alleges with the hiring of Billy Halsey ("Halsey") as a cook in late August or early September of 1998, a racially hostile work environment began to develop at the Piccadilly restaurant. Halsey would use the words "n****r" and "b***h" to refer to Owens, usually out of her presence, refer to a Hispanic cook as a "s**c," and, it seems, would behave in a generally off-putting manner around other African-American employees. The Plaintiff submits affidavit testimony that, prior to September 18, 1998, the assistant manager of the

---

[1] These reviews were conducted by Vicki Burris ("Burris"), who was the supervisor at the Piccadilly cafeteria in Gadsden, Alabama, prior to the time of the alleged harassment and retaliation.

restaurant, Henry Alexander ("Alexander"), and the manager of the restaurant, Brett Brandon ("Brandon"), were often in the presence of Halsey when he would make racially derogatory statements, but that neither took any prophylactic measures to keep Halsey from making further such comments. Plaintiff did not know of Halsey's earlier comments and actions, however, until after Halsey was terminated on September 19. 1998.

On September 18, 1998, a customer asked Owens about how long its would take for some fried green tomatoes to be prepared. Owens then turned and asked Halsey when the tomatoes would be ready. After he failed to reply, she repeated her question twice more. Another cook then answered her question, but by that point the customer stated that she did not want the tomatoes, citing Halsey's apparent attitude. Owens then asked Halsey about his behavior. Halsey exploded, yelling at Owens, "[N]o, I don't have an attitude. You [sic] [are] the one that have [sic] the attitude, you f*****g black b***h." Deposition of Owens at 130.

Owens allegedly sought out Alexander to report the incident, who, she reports, thought the incident to have been funny and took no action. An hour later, the Plaintiff approached Brandon about the incident. After speaking with Owens, Brandon then spoke to Halsey and informed him to apologize to Owens for his earlier statement.[2] Brandon told Owens to expect an apology; none came.

Later in the evening, while both Henry and Brandon were present, a customer approached Owens and informed her that the macaroni and cheese was cold. Owens then removed the food tray containing the macaroni and cheese from the line and asked Halsey to heat the food. Halsey picked up the food tray and slammed it down. Owens asked Burton to order Halsey to cook the food. As Burton did so, Halsey exited the kitchen. He walked up close to Owens and then yelled the words "you n****r b***h" at her. Neither Burton nor Alexander took any immediate action; indeed, Burton's contemporaneous notes state that

---

[2] In his contemporaneous notes, Burton refers to Halsey's statements to Owens as evidence of an "attitude problem." There is no indication that he considered it to be a potential racial harassment problem.

Halsey "continued to work the rest of the day with no problems." Plaintiff's Exhibit in Opposition to Defendant's Motion for Summary Judgment N.

Later that evening, Owens discussed over the phone the days incidents with her son, James Owens Muhammad ("Muhammad"), also a cook at the Piccadilly restaurant. Muhammad reacted poorly to the news and went to Piccadilly to confront Halsey about his comments. Upon confronting Halsey, a fight broke out between Muhammad and Halsey.[3] Muhammad was terminated by the next day for fighting. Hasley was not terminated until over one and one-half weeks later.

Plaintiff, three days after the incidents with Halsey, called Piccadilly's personnel relations hotline and reported the incident. She also, eleven days later, filed a charge of harassment and discrimination against Piccadilly, on her own behalf and on behalf of her son, resulting from the events of that evening.

According to the Plaintiff, Burton learned of the Plaintiff's charge of discrimination in October of 1998. Afterwards, Burton drafted a performance evaluation, dated October 24, 1998, that Plaintiff alleges she never saw and alleges is a farce. That performance review, while giving her favorable remarks overall, reiterated the concerns stated in earlier performance evaluations regarding her tendency to make customers feel rushed and the need for her to be more friendly to customers. The next month, however, Burton gave the Plaintiff a raise for improved customer relations.

Allegedly, on March 4 & 5, 1999, a series of incidents arose involving the Plaintiff's dealings with customers. In the first of these, occuring on March 4, 1999, a customer touched a chopped steak in the cafeteria line and then requested that she receive a different steak than the one she touched. The Plaintiff refused to give the customer a different steak. The customer then challenged Owens to a fight. Owens left her post and sought out Burton to take care of the situation. The customer, a regular, informed Burton that she thought

---

[3] There is some dispute over whether there was, in fact, a fight and who caused it.

Owens's behavior had been inexplicably rude and improper. Nonetheless, because of her threatening behavior, the customer was escorted from the restaurant and not permitted to eat.

On March 5, 1999, a customer inquired about receiving a well-done chopped steak. The Plaintiff replied that all the steaks were prepared the same and that were they cooked any more that they would be burnt. Allegedly, the Plaintiff then stated that she could have it cooked some more, but the customer told her she did not want it. When the customer reached the cashier's station, she complained that Owens's behavior toward her had been rude.

On the same day, the Plaintiff noticed a dispute taking place between a customer and a line server over a bowl of gelatin. Owens approached the customer and, inquiring into the difficulty, discovered that the customer believed the gelatin to be too hard to eat. The Plaintiff then took the gelatin from the customer and threw it into the trash disposal. She did not replace the gelatin, but rather left, believing it to be the job of the line server to provide the customer with fresher, softer gelatin. The customer complained that in not replacing her gelatin, the Plaintiff had been unduly brusque.

That evening, the Plaintiff took advantage of a free meal that she had been rewarded because of a January 1999 increase in the restaurant's business. However, when she took the meal, she neglected to inform the cashier on duty at the time that she was doing so. Thus, as Owens left the store, another employee came to her and told her that the cashier had inquired whether Owens planned to pay for the meal. Owens returned to the store and informed the cashier, in the presence of the customers not to accuse her of stealing out loud, that she was taking her free meal. Owens then left.

A few hours later, Owens returned to the Piccadilly restaurant, believing that she was required to explain to Burton the statement she had made to the cashier before he was informed of it from the cashier. Before she had the opportunity to make an explanation, however, Burton terminated her, citing her customer relations problems.

## Contentions & Analysis

Owens raises two claims in the present action. The first is that she was racially harassed, in violation of Title VII of the Civil Rights Act and 42 U.S,C, § 1981 when she was required to endure racially offensive treatment from Halsey. She also claims that Burton retaliated against her in violation of Title VII when she was allegedly terminated for filing an EEOC charge on September 29, 1998. Piccadilly contends that the Plaintiff is incapable of presenting a genuine issue of triable fact with regard to either of these claims; the Court agrees and will, therefore, grant the Defendant's motion for summary judgment.

**Racial harassment.**

To demonstrate racial harassment, a plaintiff must show that he or she has been subject to unwelcome harassment sufficiently severe or pervasive to alter the terms and conditions of his or her employment and create an abusive working environment because of his or her race. See *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (setting forth the elements of a Title VII harassment claim in the context of sexual harassment). In the instant case, Piccadilly concedes that Owens perceived her work environment to have been unduly abusive; nonetheless, it argues, no reasonable person would find that it was so abusive as to alter the terms and conditions of her employment. Owens contends that, to the contrary, the events involving Halsey were sufficiently egregious to constitute harassment.

In establishing the existence of a hostile work environment, a plaintiff must demonstrate that the harassment endured by her was both subjectively and objectively hostile. This means that the plaintiff must subjectively perceive the environment in which she works to be abusive and that a reasonable person standing in the shoes of the plaintiff would have a perception that her environment was abusive, under all of the circumstances. See *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). The central question as regards the racial harassment claim in this case is whether Owens has satisfied

the requirement of demonstrating her work environment to have objectively hostile.

The Eleventh Circuit Court of Appeals has established a clear set of guidelines for a district court analyzing whether a reasonable individual could perceive a workplace environment sufficiently hostile to be considered abusive:

> The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (*citing* Harris, 510 U.S. at 23, 114 S.Ct. 367). The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

*Mendoza v. Borden, Inc.*, 195 F.3d at 1245.

The Court first notes that the alleged racially motivated statements and actions of Halsey taking place prior to September 18, 1998, were unknown to the Plaintiff. As such, the Court cannot consider Halsey's prior statements and actions in determining whether the environment to which the Plaintiff was exposed was racially abusive. See *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995). The Court can only consider the events of September 18, 1998, the final day that the Plaintiff and Halsey worked together. The Court notes that only two racially charged incidents between the Plaintiff and Halsey occurred that day. While the language used was clearly offensive and involved the use of a racial slur, Halsey was not physically threatening Owens. Both encounters were brief. Finally, there is no indication that the Plaintiff's ability to perform her job was hampered by the incidents.

The unwillingness of Burton and Alexander to curtail Halsey's known racially disparaging behavior early in Halsey's employment with Piccadilly is troubling and raises

questions about their ability to effectively promote a race-neutral work environment. Nonetheless, the Plaintiff in this case was not adequately exposed to Halsey's racially inappropriate behavior to such a degree as to render her work environment racially hostile. As such, Owens's claims of racial harassment under Title VII and section 1981 are due to be dismissed.

**Disparate treatment based on race and retaliation.**

Owens has alleged that she was terminated in retaliation for her filing of an EEOC complaint of racial harassment. To prove her claim, she could present direct evidence of the alleged discrimination of retaliation, or, alternatively, she could attempt to prove her claims through circumstantial evidence under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). See *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Here, Owens has sought to prove her case of retaliation through circumstantial evidence.

In a case in which a plaintiff seeks to prove her case through the use of circumstantial evidence, the plaintiff creates a presumption of discrimination by establishing her *prima facie* case of discrimination or retaliation. *Id.* In evaluating Owens's claims that Piccadilly terminated her from her employment in retaliation for her EEOC charge of racial harassment, this Court will assume that she has stated *a prima facie* case of retaliation. As such, the Court need not delve into what requirements of proof she must meet to raise the presumption of retaliation.

Once the presumption of retaliation has been raised, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment decision. *Id.* Here, Piccadilly has offered as a legitimate, non-discriminatory (or retaliatory) reason for Plaintiff's Owens's termination her inability to have good customer relations.

Having set forth a legitimate, non-discriminatory reason for the employment action,

the plaintiff then bears the ultimate burden of proving her case. She can do this by attempting to discredit the employer's proffered reasons for the employment action or by presenting other evidence from which a reasonable trier of fact could infer that the employment decision was made in retaliation of her EEOC charge of racial harassment. The Plaintiff attempts to demonstrate that Piccadilly's proffered reason for her termination is pretextual, arguing that Burton's interpretation of the events demonstrating poor customer relations were not the complete picture and that, in any case, the grounds for her termination were minor. The Court disagrees. Customer service and relations problems had by the Plaintiff were documented through reviews of the Plaintiff undertaken not only by Burton, but by the previous manager as well. The events of March 4 & 5, 1999, even read in the light most favorable to the Plaintiff, would support a reasonable belief that the Plaintiff's customer interaction skills were poor. See *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, (11th Cir. 1999) (stating that courts "are not in the business of adjudging whether employment decisions are prudent or fair"). Plaintiff has offered nothing to dispute that Burton legitimately came to his interpretation of the March 4 & 5, 1999 events other than rank speculation and reliance on the *prima facie* case. Therefore, the Plaintiff has failed to demonstrate that the reasons given by Piccadilly for her termination are pretextual. The Defendant's motion for summary judgment on Plaintiff's retaliation claim is due to be granted and the claim dismissed, with prejudice.

## Conclusion

For the foregoing reasons, the motion of Piccadilly for summary judgment filed on February 22, 2000, is hereby GRANTED. The Court finds and concludes that there are no genuine issues of material and triable fact and Defendant is entitled to judgment as a matter of law. The Plaintiff's claims are hereby DISMISSED, with prejudice.

DONE and ORDERED this 21st day of April, 2000.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE